PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R.D. MARKS CONSULTING, INC., | ) | CASE NO. 5:08CV2962 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID D. DOWD |
| | ) | |
| | ) | MAGISTRATE JUDGE PEARSON |
| v. | ) | |
| | ) | |
| ASTRA HOLDINGS, LP et. al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

(5:08cv2962)

## TABLE OF CONTENTS

**Page**

INTRODUCTION...........................................................................................................3

PLEADINGS................................................................................................................3

LEGAL STANDARD....................................................................................................3

ANALYSIS...................................................................................................................5

A. Personal Jurisdiction Generally...........................................................................5

    1. Ohio Long Arm Statute......................................................................................5

        a. Plaintiff's Imputed Actions...........................................................................8

        b. Long Term Agreement................................................................................10

        c. Defendants Directly and Indirectly "Transacted Business" in Ohio..............11

    2  Due Process.......................................................................................................15

        a. General Jurisdiction....................................................................................16

        b. Specific Jurisdiction...................................................................................17

            i. Purposeful Availment.............................................................................18

            ii. Cause of Action Arises from Defendants' Activities.........................21

            iii. Reasonableness...................................................................................22

B. Evidentiary Hearing.............................................................................................23

RECOMMENDATION...............................................................................................24

2

(5:08cv2962)

## Introduction

This matter is before Magistrate Judge Pearson pursuant to a referral from District Court Judge Dowd under 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  ECF No. 4.  On February 6, 2009, Defendants  Astra Holdings, LP, and Paciugo Management LLC. filed a Motion to Dismiss For Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2) of the Rules of Civil Procedure. (ECF No. 5).  Thus, the matter before this Court is whether the United States District Court, Northern District of Ohio has personal jurisdiction over the defendants.  For the reasons detailed below, the Magistrate Judge recommends that the motion be denied in its entirety.

## I.  Pleadings

The parties have briefed the issues and, in some cases, filed competing affidavits and other documents in support of their positions.  These filings include Defendants' motion to dismiss, Plaintiff's opposition, Defendants' reply and Plaintiff's sur-reply.  (ECF Nos. 5, 6, 7, and 10).

## II.  Legal Standard

The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists.  Burnshire Dev., LLC v. Cliffs Reduced Iron Corp., 198 Fed. App'x 425, 429 (6th Cir. 2006) (*citing* CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).  In this case that burden lies with the plaintiff.  Plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.  *Id.*  When the court conducts an evidentiary hearing, Plaintiff must establish personal jurisdiction by a preponderance of the evidence.  Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003).  In a case

(5:08cv2962)

where there is no evidentiary hearing, Plaintiff must only make a *prima facie* showing and the

conflicting pleading and affidavits are viewed in a light most favorable to the plaintiff.

Burnshire, 198 Fed. App'x at 429.

Given that the Court exercised its discretion and decided against conducting an

evidentiary hearing in the instant matter, Plaintiff need only make a *prima facie* showing of

jurisdiction.[1]  Neogen Corp. v. Neo Gen Screening, Inc. 282 F.3d 883, 887-88 (6th Cir. 2002);

CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  Conflicting facts will be

construed in the light most favorable to the plaintiff, R.D. Marks.  Serras v. First Tenn. Bank

Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989).  Further, a "court disposing of a 12(b)(2)

motion does not weigh the controverting assertions of the party seeking dismissal, because we

want 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by

filing an affidavit denying all jurisdictional facts.'"  Reynolds v. International Amateur Athletic

Federation, 23 F.3d 1110, 1459 (6th Cir. 1994).  Ultimately, dismissal in this procedural posture

is proper only if all the specific facts which the plaintiff alleges collectively fail to state a *prima

facie* case for personal jurisdiction.  *Id.*

A federal court may only exercise personal jurisdiction in a diversity case if such

jurisdiction is both (1) authorized by the law of the state in which the court resides; and (2) is

otherwise consistent with the Due Process Clause of the Fourteenth Amendment.  *Id.* at 1115.

The following analysis establishes that the Court has personal jurisdiction over Defendants which

comports with both Ohio's long-arm statute and the Due Process Clause.

_____

[1]  *See* Section B. Evidentiary Hearing, *infra*.

(5:08cv2962)

## III.  Analysis

### A.  Personal Jurisdiction Generally

Plaintiff is a resident of Ohio and has its principal place of business in Akron, Ohio.  One Defendant is a U.S. citizen, the other two are Italian citizens.  All of the defendants are residents of Dallas, Texas.  Astra Holdings, LP is headquartered and has its principal place of business in Dallas, Texas.  ECF No. 5 at 6.  The Court has subject matter jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 (2005).  ECF No. 1 at 2.

In the instant matter, Defendants claim that the Court lacks jurisdiction under the Ohio long-arm statute and lacks general and specific jurisdiction.  The Court finds that the  United States District Court, Northern District of Ohio has personal jurisdiction over the defendants based upon the Ohio long-arm statute and specific jurisdiction.

#### 1.  Ohio Long Arm Statute

"When determining whether Ohio has jurisdiction over a foreign corporation, courts must engage in a two step inquiry." State ex rel. Barnabus Consulting Ltd. v. Riverside Health System, Inc., 2008 WL 2588579 *3 ¶ 13. (*citing* Toma v. Corrigan (2001), 92 Ohio St.3d 589, 592; U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181, 183; Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75.) First, a court must determine whether Ohio's long-arm statute, and the applicable Ohio Rule of Civil Procedure confer jurisdiction.  *Id.*  "If the court affirmatively answers the first inquiry, it then must determine whether granting jurisdiction would deprive the foreign corporation of due process of law under the Fourteenth Amendment of the United States Constitution." *Id.*

5

(5:08cv2962)

Pursuant to the Ohio long-arm statute, "a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state." R.C. 2307.382(A)(1).  Likewise, Ohio Rule of Civil Procedure 4.3(A), permits service of process upon a person, "who acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's . . . transacting any business in this state."  Both the statute and the rule permit jurisdiction over any nonresident defendant who is transacting business in Ohio.

To "transact" means "to prosecute negotiations; to carry on business; to have dealings . . . ." Barnabus, 2008 WL 2588579 *3 ¶ 14 (*citing* Kentucky Oaks Mall Co., 53 Ohio St.3d at 75). "Transacting any business" encompasses more than just contracting; it also includes business negotiations that the parties have only partially brought to conclusion. *Id.*  That a foreign corporation solicited business in Ohio is not alone sufficient to constitute "transacting any business." U.S. Sprint, 68 Ohio St.3d at 185.  However, a foreign corporation's initiation of the parties' business dealings is a factor that courts must assess in determining whether the foreign corporation was transacting business in Ohio. *Id.*  (*citing* Ricker v. Fraza Forklifts of Detroit, 160 Ohio App.3d 634, 639 (2005))

Additionally, courts must consider, "in which jurisdiction the parties undertook their discussions and communications, and on what terms," as well as whether the foreign corporation submitted payments to an Ohio-based plaintiff. *Id* (*citing* Ricker, 160 Ohio App.3d at 640; Hammill Mfg. Co. v. Quality Rubber Prod's, Inc. (1992), 82 Ohio App.3d 369, 374 (holding that a foreign corporation is "transacting business" in Ohio where it "initiates, negotiates a contract,

6

(5:08cv2962)

and through the course of dealing becomes obligated to make payments to an Ohio corporation").

The Ohio courts have construed the "transacting any business" clause broadly, lending credence

to the conclusion that the clause is coextensive with the parameters of due process.  Burnshire

Dev. v. Cliffs Reduced Iron Corp, 198 Fed. Appx. 425, 431 (2006) (*citing* Ricker, 160 Ohio

App.3d at 639); Kentucky Oaks Mal Co. 53 Ohio St.3d at 76.)

    In the instant case, Defendants vehemently deny that the Ohio long-arm statute is

applicable because none of the defendants' actions during the negotiation or performance of the

Agreement gave rise to the "transaction of business" in Ohio.  Defendants contend that:

> (1) Plaintiff approached them in Texas about consulting services;
> (2) During negotiation of the Agreement all meetings took place in Texas;
> (3) The parties signed the agreement in Texas;
> (4) The parties entered into a Confidentiality Agreement that was governed by Texas law;
> (5) Plaintiff's work resulted in meetings in Texas, Colorado and Illinois, not Ohio;
> (6) Plaintiff's work did not result in locations in Ohio or negotiations for opening locations in Ohio;
> (7) None of the defendants ever traveled to Ohio for any reason related to the Agreement; and
> (8) The final meeting between the parties occurred in Texas.

    Defendants further contend that although *they* contacted Plaintiff by phone and email

while he was in Ohio, this contact does not constitute transacting business in Ohio and thus,

"there are no circumstances under which Plaintiff can prove that Ohio's long-arm statute permits

this Court, or any Ohio court, to exercise personal jurisdiction over Defendants."  ECF No. 5 at

13.

    Plaintiff retorts that Defendants contacted him regarding his real estate consulting

services after he made a sales call on them about his Belgian waffle products.  ECF No. 6.

Plaintiff admits that face to face meetings took place in Texas, but email and telephone meetings

7

(5:08cv2962)

occurred while he was in his Ohio office.  *Id.*  Also, Plaintiff points to a prospective franchisee that asked about opening a location at the Crocker Park shopping area in Westlake, Ohio. Plaintiff provided the Court with copies of emails he exchanged with Chairman, Chief Executive Officer and founding partner of Astra Holdings, Ugo Ginatta, wherein Ginatta engaged Plaintiff about two retail locations in the Northern District of Ohio - Crocker Park and "Eaton" or  "Eton" - and encouraged Plaintiff to find out more information on those Greater Cleveland area locations.  ECF No. 10-2, 10-4, 10-5.[2]

In sum, Plaintiff counters that Defendants are subject to jurisdiction under the Ohio long-arm statute because (1) Plaintiff's actions performed on behalf of the defendants are imputed to the defendants; (2) Defendants directly transacted business in Ohio by engaging Plaintiff in a long-term agency agreement; and (3) Defendants directly and indirectly transacted business with Ohio Companies and Residents.

### a.  Plaintiff's Imputed Actions

The Ohio long-arm statute specifically extends to causes of action arising from acts performed by an agent of the defendant and the Ohio Revised Code specifically states that a foreign corporation is subject to jurisdiction in Ohio if they transact business in Ohio directly or through an agent.  Further, the Supreme Court has noted that when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, at least where that party is a primary participant in the enterprise and has acted purposefully in directing those activities.  *See* Int'l Shoe v. State of Washington, 326 U.S. 310,

---

[2]  *See* Ugo Ginatta's Affidavit, ECF No. 5-2.

8

(5:08cv2962)

330 (1945); *See also* Calder v. Jones, 465 U.S. 783, 790 (1984).

Under Ohio law , there are four elements of an agency relationship.  "Agency is a fiduciary relation which results from (1) manifestation of consent by one person to another that the other; (2) shall act on his behalf; and (3) subject to his control; and (4) consent by the other so to act."  Berge v. Columbus Cmty. Cable Access, 736 N.E.2d 517, 531 (1999) (*quoting* Restatement (Second) of Agency § 1 (1958).  Also, under Ohio's agency law, a principal may ratify the conduct of her agent even if that conduct was initially unauthorized so that the conduct becomes binding on the principal.  *See* Campbell v. Hospitality Motor Inns, Inc., 24 Ohio St.3d 54, 493 N.E.2d 239, 240 (1986) (per curiam).

Under the consulting agreement ("Agreement") signed by the parties, the Plaintiff agreed to render services on Defendants' behalf and only at their behest.  By signing the Agreement the defendants manifested their consent to allow Plaintiff to act on their behalf to:

> (1) "Represent [defendants] in securing all shopping mall and lifestyle/mixed use locations exclusively across the U.S. and other areas that [defendants] may designate  (Excluding the Dallas/Ft. Worth Metroplex) . . .";
> (2) "Negociate the Economics of all leases . . . 'on [defendants] and [defendants'] franchisees behalf, subject to [defendants'] and [defendants' franchisee] approval'";
> (3) "When asked, refer brokers to [defendants] in local markets . . . ";
> (4) "In the event that [defendant] would desire for [Plaintiff] to conduct on-site physical review of potential sites in a specific area . . ."; and
> (4) "[Plaintiff] will work with [Defendants] to secure non traditional locations . . . ."

ECF No. 6-2 at 1-2.

After reviewing the pleadings and the Agreement, the Court finds that Plaintiff was acting as the defendants' agent under the Agreement.  Moreover, even if the defendants did not specifically authorize Plaintiff to transact business in Ohio, the lack of Defendants' protest and

9

(5:08cv2962)

their encouragement of business deals with Ohio companies and individuals, ratified Plaintiff's conduct.[3]  Thus, any business transacted in Ohio by Plaintiff, on behalf of the defendants can be directly attributed to the defendants and subjects them to the Ohio long-arm statute.

### b.  Long Term Agreement

Plaintiff asserts that Defendants intentionally and knowingly entered into a long-term Agreement with his Ohio company and therefore knew or should have known that a substantial part of the work under the Agreement would be performed in Ohio.  And furthermore, by negotiating and entering into the Agreement with his Ohio company, Defendants "transacted business" in Ohio.  ECF No 6 at 15.

The Supreme Court has emphasized with respect to interstate contractual obligations, that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.[4]  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985).

The Court agrees that Defendants intentionally and knowingly entered into an agreement

---

[3]  Although Defendants allege that they were not interested in opening a location in Ohio and did not give Plaintiff permission to transact business in Ohio, the emails between Plaintiff and a top official at Defendants' businesses regarding a potential Ohio franchisee suggests otherwise.  ECF Nos. 10-2, 10-4, 10-5.

[4]  There is some dispute between the parties about which party contacted the other regarding entering into a consulting agreement.  Although a question of who initiated the business dealings is not determinative as to whether the defendants transacted business in Ohio and are therefore subject to personal jurisdiction in Ohio, the Court must view the allegations in the pleadings and documentary evidence in the light most favorable to the nonmoving party (Plaintiff) and resolve reasonable competing inferences in his favor.  Accordingly, the Court will presume (for the purposes of this motion to dismiss only) that Defendants initiated the parties' contact regarding entering into a consulting agreement.

10

(5:08cv2962)

with the Ohio company because, as they freely admitted, even though they acknowledged Plaintiff 's Ohio address, and telephone and facsimile numbers they ultimately executed a five-year agreement to utilize Plaintiff's exclusive consulting services.[5]  ECF No. 6-2.  As the address and telephone/facsimile numbers were prominently placed at the top of the document, Defendants were given fair notice that Plaintiff's company had its principle place of business in Ohio.  The Ohio address and telephone/facsimile number should have alerted Defendants that should anything go awry, the Ohio company with whom they were dealing may bring suit in Ohio.  This possibility existed regardless of whether the Plaintiff's company was incorporated in Ohio for tax purposes or any other purpose.  Thus, when the defendants engaged an Ohio company to be their "exclusive" agent [6], Defendants were on notice that they could be subject to the Ohio long-arm statute.

### c. Defendants Directly and Indirectly "Transacted Business" in Ohio

Plaintiff alleges that Defendants "transacted business" in Ohio directly and through Plaintiff (their agent).  Specifically, Defendants "negotiated with and otherwise interacted with" a regional Vice President of Cleveland-based Forest City Enterprises when they directed Plaintiff

---

[5]  The Court is not persuaded by Ugo Ginatti's claim that Defendants "had no knowledge as to where [Plaintiff] was located [] when [he was] not in Dallas . . ."  Ugo Ginatta Affidavit, ECF No. 5-2, ¶ 15.  Defendant's statement that they "had no intention that Marks would be performing any *meaningful work* from Ohio because Defendants retained Marks due to his regular presence in Dallas and in order to "piggyback" on his travels throughout the country" cuts against Defendants' arguments that it had not intended to do business with an Ohio company.  ECF No. 7, n. 6  (citing Vincent Ginatta Affidavit) (emphasis added) Rather, it persuades that Court that had Plaintiff's efforts proved fruitful, Defendants' objections to jurisdiction would be far less strident.

[6]  See ECF No. 6-2  (Agreement).

11

(5:08cv2962)

to meet with the regional vice president to arrange a meeting between the Vice President, a

potential franchisee, and Defendants.  Defendants also sent samples of gelato to Forest City's

Cleveland headquarters.  Plaintiff had conversations with other Ohio based real estate

development companies, DDR, Simon Property Group and Steiner & Associates, on behalf of the

defendants.  ECF No. 6 at 16.  Also, Plaintiff points out that Defendants solicited potential

franchisees from anywhere in the United States through their online website.  *Id.*

Defendants do not deny Plaintiff's above claims of negotiation and contact on their

behalf, but instead argue that the contacts with the Ohio developers were in relation to business

outside of Ohio and that none of the interactions resulted in business for Defendants in the other

states.  Therefore, Plaintiff's claims are nothing more than "red herrings."  ECF No. 7 at 18.

Regarding the solicitation of franchisees through their website, the defendants reduce

their argument to several footnotes explaining that:

> Plaintiff's half-hearted attempt to rely on Defendants' website as a
> basis for jurisdiction is unavailing. Federal courts addressing this
> issue have required the website to create the contacts at issue in the
> case.  *See* Bird v. Parsons, 289 F.3d 865, 874-75 (6th Cir. 2002) (a
> website accessible to anyone over the Internet is insufficient to justify
> general jurisdiction, and can only support specific jurisdiction where
> the claims at issue arise from contacts through the website); Tewart
> Enterprises, 2007 U.S. Dist. LEXIS 28723 at*20 ("[T]he Plaintiff
> makes no allegation that the defendant's website or letter have
> generated any business connection between the defendant and Ohio.
> In the other cases that placed importance on a website in the
> purposeful availment analysis, the website had created some
> commercial connection."). Here, Plaintiff has not made **any**
> allegation or presented **any** evidence demonstrating that Defendants'
> website has any involvement with the Agreement or Defendants'
> alleged breach. Plaintiff's reference to Defendants' website is a classic
> red herring.  The defendants do not respond to Plaintiff's claims
> about the potential Ohio franchisee or the fact that they solicit

(5:08cv2962)

>        franchisees from anywhere in the United States through their website.

ECF No. 7 at 19, n.15, and further that:

>        Plaintiff's reference to an inquiry from an Ohio resident about a
>        franchise at Crocker Park in Westlake, Ohio is a red herring. This
>        unsolicited inquiry consisted of one telephone call from a student
>        with no financial means. (Vincent Ginatta Aff., ¶ 9.) This contact is
>        woefully insufficient to establish jurisdiction over Defendants.

ECF No. 7 at 8, n 5.

The Court does not agree that Plaintiff's arguments are merely "red herrings."  Rather, the

Court finds that Defendants are downplaying contacts by suggesting that the contacts were not

"important" to their growth strategy and pointing out that no franchise deals came from the

contacts.  The more salient point in this jurisdiction analysis, however, is that Defendants

independently and through Plaintiff (their agent) made contact with Ohio companies and

residents in *pursuit* of new business.  While it is true that a foreign corporation's solicitation of

business in Ohio is not alone sufficient to constitute "transacting any business," the solicitation

of business in addition to other contacts with Ohio and its residents could be enough.  Even if a

solicited deal is not completed, the contacts made to initiate the deal still count and could subject

Defendants to the Ohio long-arm statute.  U.S. Sprint, 68 Ohio St.3d at 185; Ricker, 160 Ohio

App.3d at 639  (holding a foreign corporation's initiation of the parties' business dealings is a

factor that courts must assess in determining whether the foreign corporation was transacting

business in Ohio);  Barnabus, 2008 WL 2588579 *3 ¶ 14 (*citing* Kentucky Oaks Mall Co., 53

Ohio St.3d at 75) ( holding to "transact" means "to prosecute negotiations; to carry on business;

to have dealings" and that "Transacting any business" encompasses more than just contracting; it

13

(5:08cv2962)

also includes business negotiations that the parties have only partially brought to conclusion).

The Court also finds that Defendants' solicitation of franchisees through their website is important to the personal jurisdiction issue and in at least one instance Defendants moved closer to creating a "commercial connection," as discussed below.  Tewart Enterpr. v. Dawson, 2007 U.S. Dist. LEXIS 28723 *20.

Defendants chose not to "respond to Plaintiff's claims about the potential Ohio franchisee or the fact that they solicit franchisees from anywhere in the United States through their website," and nonchalantly brushed off the contact with a potential Ohio franchisee as an "unsolicited inquiry consist[ing] of one telephone call from a student with no financial means."  ECF No. 7 at 4 & 15.  The Court, however, does not so easily dismiss Defendant's website solicitation as a non-issue.

In response to Defendant's cursory treatment of the website solicitation in their reply brief, Plaintiff filed several revealing exhibits in sur-reply.  Plaintiff provided an example of the "online application," which provides several "disclaimers," none of which exclude Ohio as a geographic location for a franchise.  ECF No. 10-3.  Plaintiff also provided documentation of an exchange of emails between Plaintiff and Defendants' Chairman, Chief Executive Officer and founding partner regarding an inquiry from a prospective franchisee in Ohio and how it should be handled.  ECF Nos. 10-2, 10-4, 10-5.  These emails reveal that one of  Defendants top executives appears to have taken seriously the inquiry from the mere "student."

Defendants' attempts to make light of Plaintiff's contacts with Ohio Companies and Residents on their behalf is not well taken by the Court.  Although no business resulted from the

14

(5:08cv2962)

contacts, the contacts were made, admittedly under Defendants' direction and with their

knowledge.   The pleadings paint a portrait of defendants who were eager to take on the benefits,

but not the burdens, of a business relationship with Ohio Companies and Residents.

The Court finds that Defendants "transacted business" directly and through Plaintiff,

acting as their agent, in Ohio, and therefore are subject to the Ohio long-arm statute.

### 2.  Due Process

The foundation of personal jurisdiction due process analysis is that when the defendant is

not physically present in a forum, it must have "certain minimum contacts with it such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

Int'l Shoe Co., 326 U.S. at 316 (*quoti*ng Milliken v. Meyer, 311 U.S. 457, 463 (1940).  Minimum

contacts exist when "the defendant's conduct and connection with the forum state are such that

he should reasonably anticipate being haled into court there."  World-Wide Volkswagon Corp. v.

Woodson, 444 U.S. 286, 297 (1980).  It is necessary that the defendant "purposely avail[] itself

of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws."  Burger King Corp., v. Rudzewicz, 471 U.S. 462, 475 (1985); *see also*

Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1273 (6th Cir. 1998).  "This purposeful

availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a

result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or

a third person."  *Id.*  "'Random,' 'fortuitous,' or 'attenuated' activity is not a constitutionally

adequate basis for jurisdiction."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

The Supreme Court distinguishes between "general" and "specific" jurisdiction.  Either

15

(5:08cv2962)

one, however, is an adequate basis for personal jurisdiction.  *See e.g.* Burger King Corp*., 471 U.S. at 472, 473 n. 15.*  General jurisdiction is proper only where a "defendant's contacts with the forum state are of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action filed is unrelated to the defendant's contacts with the state."  Bird v. Parsons, 289 F.3d 865,873 (6th Cir. 2002) (*quoting* Third Nat'l. Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989)).  Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  Helicopteros Nacionales de Colombia, 466 U.S. 408, 414 (1984).  Specific jurisdiction over the defendant is permissible only if the defendant's contacts with Ohio satisfy the three-part test that the Sixth Circuit established in S. Machine Company v. Mohasco Indus, Inc., 401 F.2d 374, 381 (6th Cir. 1968).  The court notes that specific jurisdiction has been upheld in cases where doing so required the defendant to travel.  *See*, *e.g.*, Lanier v. Am. Bd. Of Endodontics, 843 F.2d 901, 911-12 (6th Cir. 1988) (upholding jurisdiction in Michigan over Illinois defendant); Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1170-71 (6th Cir. 1988) (allowing jurisdiction in Michigan over California defendant).

### a. General Jurisdiction

Defendants argue that Plaintiff cannot establish general jurisdiction because "Defendants' contacts in Ohio do not even come close to approaching 'continuous and systematic' . . . ."  ECF No. 5 at 14.  Further, "general jurisdiction does not exist over a foreign company that does not regularly do business in the state, has no offices, employees, or property in the state, and is not

16

(5:08cv2962)

licensed to do business in the forum."  *Id.* (*quoting* Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992).  Defendants also assert that they are residents of Dallas, Texas; their business is organized under Texas law; they have never owned or operated any units in Ohio; they have never had any franchises in Ohio; and they do not currently have any plans to open any units or award any franchises in Ohio.

Plaintiff counters that "since all of Defendant's identified contacts with Ohio relate directly to the claims of this case, only the 'specific jurisdiction' standard" should apply.  ECF No. 6 at 17.

The Court agrees that it does not have general jurisdiction over Defendants.  The Court, mindful that personal jurisdiction may be adequately based upon either general or specific jurisdiction, finds, however, that it has specific jurisdiction over the defendants in the instant matter.  *See* e.g., Burger King, Corp.  471 U.S. at 475.

### b.  Specific Jurisdiction

Defendants claim that Plaintiff cannot establish specific jurisdiction because Plaintiff has not made a *prima facie* showing and further cannot satisfy the requirements of due process.  ECF No. 5 at 15.  To establish specific jurisdiction, Plaintiff must demonstrate that such an exercise would not "offend traditional notions of fair play and substantial justice."  Bird, 289 F.3d at 871-72.  To make a *prima facie* showing of jurisdiction the Plaintiff must satisfy a three-part test: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must

17

(5:08cv2962)

have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendants reasonable.  *Id.* (*quoting* Mahasco Indus., Inc., 401 F.2d  at 381).

### i. Purposeful Availment

Generally, "'purposeful availment' is something akin to deliberate[ly] undertaking to do, or cause an act, or thing to be done…or conduct which can be properly regarded as a prime generating cause of the effects resulting in . . . something more than a passive availment of . . . opportunities." Neogen, 282 F.3d at 891 (*quoting* Khalaf v. Bankers & Shippers Ins. Co., 273 N.W.2d 811, 819 (Mich. 1978)).  It is necessary that a defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at 475.

The Sixth Circuit has held that where it is shown that one party reasonably expects to conduct a given level of business in the forum state continuously, the plaintiff has established a *prima facie* jurisdiction case. CompuServe Inc., 89 F.3d at 1265.  "The test is whether the absolute amount of business conducted by the defendants in the state represents something more than 'random, fortuitous, or attenuated contacts with the state." Neogen, 282 F.3d at 892 (*quoting* Burger King Corp., 471 U.S. at 475).  This requirement does not mean that a defendant must be physically present in the forum state. Burger King Corp., 471 U.S. at 476.  A defendant has "purposefully availed" himself of a forum by engaging in activity that should provide "fair warning" that he may have to defend a lawsuit there.  *See* World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980) (explaining that a purposeful availment requirement assures that defendant will be aware that it is subject to suit in a forum state).

18

(5:08cv2962)

The Supreme Court has found that "a single act may meet the purposeful availment requirement." Youn v. Track, Inc., 324 F.3d 409, 419; *see also*, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (finding that a single contract, entered into by mail with a forum state resident, could meet the minimum contacts test for suit on the contract).  Moreover, a defendant has purposefully availed himself of the opportunity of acting in that state, if he should have reasonably foreseen that the transaction would have consequences in that state.  CompuServ Inc., 89 F.3d at 1265.

In the instant matter, Defendants assert that "the 'purposeful availment' requirement recognizes that a nonresident will not be subject to the jurisdiction of the forum state, solely as a result of 'random', 'fortuitous', or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person'." ECF No. 5 at 15 *(quoting* Conti, 977 F.2d at 982).  The defendants further assert that " a forum resident's contract with an out-of-state defendant alone is insufficient to automatically establish jurisdiction over the defendant." *Id.* at 16.

Plaintiff argues that the Court should find that Defendants did indeed purposefully avail themselves of the privilege of acting in Ohio.  Plaintiff also argues that the contacts with Ohio were not 'random,, 'fortuitous,' 'attenuated' or 'unilateral activity' of Plaintiff and requests that in determining whether Defendants purposefully availed themselves by entering into contract with Plaintiff, the Court consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." ECF No. 6 at 18 *(quoting* Burger King Corp., 471 U.S. at 474.)

In *Burger King* the Court found that "where the defendant 'deliberately' has engaged in

19

(5:08cv2962)

significant activities within the state . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King Corp., 471 U.S. at 475-76.

The pleadings and exhibits, viewed in the light most favorable to Plaintiff, show that Defendants often contacted Plaintiff by phone or email in his Ohio office to request that he do work on their behalf and that Plaintiff performed work in Ohio on Defendants' behalf.[7] ECF No. 6 at 18-19.  Also, the Agreement between Plaintiff and Defendants called for services to be performed "throughout the United States," and only specifically excluded the Dallas/Ft. Worth area.  Accordingly, the fact that Plaintiff could have been working on behalf of Defendants in any city and state in the United States (except for the Dallas/Ft. Worth area), including Ohio was probable and foreseeable.  The likelihood that Plaintiff was operating on behalf of Defendants from Ohio should have been forecast by the fact that Plaintiff's Ohio office address and telephone numbers were prominently displayed at the top of the Agreement.  ECF No. 6 at 18. Moreover, listed under "steps needed to be taken,' Plaintiff promised to "work with [Defendants] in arriving at specific target geographical areas for growth and identify real estate projects of

_____

[7] Telephone calls and emails alone can not justify personal jurisdiction over a defendant, as these communication are considered 'secondary' or 'ancillary' factors, and can not alone provide minimum contacts required by due process.  Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982); (quoted in LAK Inc. v. Deer Creek, 885 F.2d 1293, 1301 (6th Cir. 1989)).  Here, however, there are other significant contacts in addition to the telephone calls and emails exchanged.

(5:08cv2962)

interest within those areas." ECF 6-2 at 1.  This suggests that  Plaintiff and Defendants had some

discussion as to what geographical area Plaintiff would be directed to confine his activities, and

further that Defendants were aware that Plaintiff would be seeking business in Ohio on their

behalf.

After reviewing all of the facts, including prior negotiations, contemplated future

consequences of the contract, terms of the contract, and the parties' course of dealings, the Court

finds that Defendants purposefully availed themselves of the privilege of doing business in Ohio

and that their contacts were not 'random,' 'fortuitous,' 'attenuated' or 'unilateral activity' of the

plaintiff.  Thus, the Court finds that Defendants did purposefully avail themselves of the

privilege of doing business in Ohio.

### ii.  Cause of Action Arises from Defendants' Activities

Generally, "if a defendant's contacts with the forum state are related to the operative facts

of the controversy, then an action will be deemed to have arisen from those contacts."

CompuServ Inc., 89 F.3d at1267.

Here, Defendants' contacts with Ohio were related to the operative facts of the

controversy because they signed a contract with Plaintiff for his consulting services; gave

Plaintiff free reign over the entire United States (except for the Dallas/Ft. Worth area); directed

Plaintiff to make connections with Ohio real estate development corporations regarding

properties in other states; mailed gelato to the Ohio headquarters of more than one Ohio real

estate development corporation; engaged in discussions, however brief, with a prospective Ohio

franchisee; and had Plaintiff provide information on at least two properties in Ohio (Crocker Park

21

(5:08cv2962)

and Eton).  According to Plaintiff, after doing work under the Agreement for Defendants, they breached the Agreement when they did not pay for that work.  Plaintiff's complaint for breach of contract arose directly from the above contacts, among others.

### iii.  Reasonableness

Generally, if a court finds the first two elements of the *prima facie* case, then an inference arises that the third element of reasonableness is also present.  *Id*. at 1268.  Against that backdrop, the Court also considered the lessons taught by *Asahi Metal Indus. Co., Ltd. v. Superior Court*, wherein the Supreme Court determined whether the exercise of specific jurisdiction over the defendant was reasonable by balancing "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  Asahi Metial Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113 (1987).  That Court also ruled that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  *Id*. at 114.

There are several factors that a court may consider in determining whether personal jurisdiction is reasonable, including" . . .  the burden on the Defendants, the interest of the forum state, the plaintiff's interest in obtaining relief and the interest of other states in securing the most efficient resolution of controversies."  *Id*. (*quoting* Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir.1982); Mohasco Indus., 401 F.2d at 384).  These factors are discussed below.

> **Burden on the Defendants**: *The burden on the Defendants is minimal as they have previously flown to other states for business meetings with Plaintiff and representatives from Ohio based companies.  Thus, flying to Ohio to attend court proceedings is not unreasonable.  Moreover, the Sixth Circuit has upheld jurisdiction in cases when doing*

(5:08cv2962)

so forced the defendant to travel.  See e.g. Am. Greetings Corp., 839 F.2d 1164, 1170-71 *(allowing jurisdiction in Michigan over California defendant).*

***Interest of the forum state****: As Plaintiff is a citizen of the state of Ohio, Ohio has an interest in making sure that its citizens are treated fairly and afforded access to the proper courts if it appears they have not been treated fairly.  Further, Ohio has an interest in making sure that corporations that do business within the State of Ohio treat its citizens fairly and do not take unfair advantage of their nonresident status.*

***Plaintiff's interest in obtaining relief****: Plaintiff has an interest in obtaining monetary damages allegedly owed to him by Defendants as well as any other justifiable relief.*

***Interest of other states in securing the most efficient resolution of controversies****: Texas would certainly have an interest in securing an efficient resolution of a controversy involving her citizen corporations.  To that end, however, Ohio has an equally pressing interest.  At this time, Defendants have not put forth any persuasive reasons why this matter should be dismissed, or transferred, nor have they requested it be transferred.  Therefore, this case will remain in Ohio.*

## B.  Evidentiary Hearing

Defendants have requested an evidentiary hearing to determine whether there is personal jurisdiction over Defendants alleging that Plaintiff makes "vague, unsubstantiated characterizations of the parties' contacts with Ohio, and self-serving statements of purported fact that Defendant believes are false."  ECF No. 7 at 19.

Plaintiff asserts that it adequately demonstrated personal jurisdiction and therefore an evidentiary hearing is not necessary and that Defendants have not raised any question for which an evidentiary hearing is necessary.  Again, the Court agrees with Plaintiff.

Despite the fact that Defendants urging that Plaintiff's "bald allegations" require an evidentiary hearing, that decision is left to the discretion of the Court.  Rule 12(d) provides that a motion to dismiss brought under Fed. R. Civ. P. 12(b)(2) may be heard and determined before trial, but that it is within the Court's sole discretion to defer hearing of evidence and a ruling on

23

(5:08cv2962)

the motion until trial.  Serras, 875 F.2d at 1214; Fed. R. Civ. P. 12(d).  The case law establishes a

settled procedural scheme to guide trial courts in the exercise of this discretion.  If a court

decides that the motion can be ruled on before trial, the court "may determine the motion on the

basis of the affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an

evidentiary hearing on the merits of the motion."  *Id.* (*quoting* Marine Midland Bank, N.A. v.

Miller, 664 F.2d 899, 904 (2d Cir. 1981).  However the Court handles the motion, Plaintiff

always bears the burden of establishing that jurisdiction exists.  *Id.* (*citing* McNutt v. Gen.

Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

    In the instant matter, upon review of the written submissions, and considering the

pleadings and affidavits in a light most favorable to Plaintiff, the Court finds that Plaintiff has

made a *prima facie* showing that personal jurisdiction exists.  The Court, in the exercise of its

discretion, finds that the motion to dismiss for lack of personal jurisdiction can be decided upon

the written submissions, therefore an evidentiary hearing is not necessary nor would it be helpful.

Accordingly, the Court denies Defendants' request for an evidentiary hearing.

### IV.  Recommendation

    In accordance with the foregoing,  the Magistrate Judge recommends that Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction (ECF. No. 5) be DENIED in its entirety as

this matter should not be dismissed for lack of personal jurisdiction because the Ohio long-arm

statute reaches Plaintiff's claims and Plaintiff has made a *prima facie* showing of specific

24

(5:08cv2962)

jurisdiction over the Defendants.  Additionally, the Magistrate Judge recommends that

Defendants be ordered to answer the complaint by April 28, 2009.


                                                         /s/ Benita Y. Pearson
           Dated: April 10, 2009                                  United States Magistrate Judge


## OBJECTIONS

        Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981). *See also*, Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

25